# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MAGDALENA ZBLEWSKA, | ) |
| Plaintiff, | ) Case No. 17-cv-5715 |
| v. | ) Judge Robert M. Dow, Jr. |
| DAVID J. SHULKIN, Secretary of Veterans Affairs, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Magdalena Zblewska ("Plaintiff") brings this action against the Secretary of Veterans Affairs ("Defendant") for violation of the Rehabilitation Act (Count I) and the Americans with Disabilities Act (Count II). Currently before the Court is Defendant's Motion for Summary Judgment [25]. For the reasons explained below, Defendant's motion [25] is denied with respect to Count I and granted with respect to Count II. Judgment will be entered for the Defendant on Count II. This case is set for status hearing on August 21, 2019, at 9:00 a.m. Additionally, the Court orders the substitution of Robert L. Wilkie, Jr., Secretary of Veterans Affairs, for David J. Shulkin, under Federal Rule of Civil Procedure 25(d).

### I. Background

The Court takes the relevant facts primarily from the parties' Local Rule 56.1 statements, [27], [28], [29], [30], and [36] and, where applicable, the Complaint [1] and Answer [12]. The following facts are undisputed except where a disagreement between the parties is noted.

This Court has subject matter jurisdiction over the Plaintiff's federal claims pursuant to 28 U.S.C. §§1331 and 1343. Venue in this judicial district is proper because the events alleged in Plaintiff's complaint occurred within the Northern District of Illinois.

The Edward Hines Jr. Veterans Administration Hospital ("Hines") is part of the United States Department of Veterans Affairs. The Department of Veteran Affairs ("VA") is an Executive department as listed in 5 U.S.C. § 101. Pursuant to 5 U.S.C. § 105, an Executive department is an "Executive Agency." David J. Shulkin was the Secretary of the Department of Veterans Affairs at the time the suit was filed. His successor is Robert L. Wilkie, Jr.

Plaintiff Magdalena Zblewska began working at Hines as a certified pharmacy technician, GS-0661-3, Step 1, in May 2006. She worked in the inpatient pharmacy. An inpatient pharmacy technician's duties at Hines are laid out in the "Functional Statement, Inpatient Pharmacy Technician (0661 GS6) Hines VA Hospital. [27-1]. An inpatient pharmacy technician's duties include filling prescriptions, filling orders, stocking supplies, making deliveries, answering phones, and working with intravenous (IV) mixtures. *See id.* The Occupational Safety and Health section of the Functional Statement, subsection d., states in part: "May require lifting and carrying light loads, including boxes, equipment, unit dose-cassettes, and IV solutions; stooping or kneeling (e.g., to pick up items from the floor, remove and replace items on lower shelves, and to file documents in lower file drawers, etc.); sitting, walking, or standing for long periods of time." [27-1] at 159.

At her deposition, Plaintiff testified that she was diagnosed with fibromyalgia and degenerative disc disease in 2010 ([27-1] at 42) and that certain activities cause pain and stiffness in her back (*id.* at 57). Her doctor limited her pushing, pulling, overhead lifting, excessive bending, and use of stairs. [28] at 1-2. On April 18, 2013, Plaintiff received a doctor's note that stated,

"Plaintiff may return to work full time, with the following restrictions: no lifting greater than 10 [pounds], limited pushing and pulling." Plaintiff asked her supervisor at the time, Floyd Fineman, not to assign her certain tasks based on those limitations. Fineman agreed, and as of at least February 2014, Plaintiff was not required to work in the IV room[1] or push heavy carts (known as "ECC carts"), which were used to deliver medication and supplies to different parts of the hospital.[2] As early as 2013, the pharmacy at Hines was in the process of "going cartless" and using other methods to deliver and dispense medication. [36] at 2-3. The pharmacy was still using at least one ECC cart at least as late as May 2017. [36] at 3.

By 2015, Plaintiff had a new supervisor, Adam Powell. Powell continued Fineman's practice of not assigning Plaintiff to push heavy carts or work in the IV room until May 2015. In early May 2015, Powell instructed Plaintiff to fill out a Written Confirmation of Request for Accommodation (VA Form 0857a) and sign an authorization to release her medical records. Plaintiff filled out the form and submitted it to Powell and Danilla Miller, the Accommodation Coordinator at Hines. As an accommodation, Plaintiff requested "no pushing, pulling, and picking up heavy items; no pushing carts; haven't worked IV because of back stiffness and pain." [27-1] at 175. In the "Reason for Request" section, Plaintiff wrote "herniated disc l5; leg swelling/numbness; sciatica." With the request for accommodation, Plaintiff submitted documentation from her physician. Miller stated that she was unable to read the physician's notes and asked for more specific, detailed, and legible responses from Plaintiff's physician. Plaintiff's physician responded to that request, but his notes did not contain a restriction on pushing or pulling.

---

[1] Plaintiff asserts and Defendant admits that one of Plaintiff's fellow pharmacy technicians, Dominic Balestri, received an accommodation and, as of August 31, 2016, had not worked in the IV room for years. See [36] at 8.

[2] Defendant characterizes the limitations on Plaintiff's tasks as "light duty." [28] at 1-2. Plaintiff denies that she was on light duty. *Id.*

3

From May to October 2015, while Hines was processing the request, Plaintiff did not work in the IV room or push or pull the heavy ECC carts.

On October 15, 2015, Powell denied Plaintiff's request for accommodation at least in part, although the parties disagree on exactly what happened. According to Defendant, Powell offered to let Plaintiff use a cushioned chair in the IV room and agreed to require her to lift no more than 25 pounds. [28] at 4. Powell denied the accommodation request regarding pushing and pulling carts, because the medical documentation did not support the request, but offered to allow Plaintiff to use "a different cart" for transporting deliveries. [28] at 4. Defendant says that Plaintiff declined these accommodations and refused to meet with the Accommodation Coordinator (Danilla Miller) when Powell suggested she do so.

According to Plaintiff, Powell offered no accommodation regarding pushing or pulling carts, including the use of a different cart, and Plaintiff had already been using a lighter cart to make deliveries. [29] at 2. Plaintiff agrees that Powell offered to accommodate her request regarding lifting heavy items and says that the offer of a chair in the IV room satisfied her request for an accommodation. *Id*. Plaintiff denies that she declined any offers of accommodation. Plaintiff admits that she refused to meet with the Miller. She says that she refused because a prerequisite of the meeting was signing VA Form 0857h, which she did not want to do.[3] [28] at 4.

---

[3] Plaintiff characterizes VA Form 0857h, "Employee Limitations on Reassignment Options," in this way: "This form provides, inter alia, that if the VA has determined that plaintiff was no longer able to perform the essential functions of her position, it would seek a suitable position for plaintiff, but if the VA could not find one, it no longer had any further obligation to accommodate her." [28] at 5. In fact, the first line on the form reads "*It has been determined* that you are no longer able to perform the essential functions of your current position due to functional limitations caused by your disability." [30] (emphasis added). It appears that Plaintiff did not want to agree that she was unable to perform the essential functions of her positions.

It is undisputed that, within a few weeks, Plaintiff submitted a second request for accommodation and provided Hines with another doctor's note on November 3, 2015. The new note stated: "Plaintiff may return to work full time, with the following restrictions: No lifting repetitively greater than 25 [pounds]. No over head lifting. No pushing or pulling greater than a small med cart or 50 [pounds]. May carry 25 [pounds] or less. No repetitive bending from waist level. No use of ladders, or scaffolds, or stairs greater than 8 at one time. Need frequent positional changes." [29-6].

On November 17, 2015, Powell denied Plaintiff's second request for accommodation. Powell said that he determined that Hines could not accommodate Plaintiff in her position as a pharmacy technician because she could no longer perform the essential functions of her position due to her functional limitations. Plaintiff again declined to fill out VA Form 0857h or meet with the accommodation coordinator.

On or around November 24, 2015, Plaintiff and Powell had a conversation, which included another pharmacy technician, Yolanda Clayton. The parties' accounts of this conversation differ. Plaintiff says she had learned that the IV room had been remodeled such that she would not have to bend down to get supplies, and that the stool in the room had been replaced by better chairs; as a result, she told Powell that she could and would work in the IV room. [28] at 6. She also says that she asked Powell again for an accommodation regarding pushing carts and Powell suggested that Plaintiff take the patient medications out of the cassettes, relabel the medications, and deliver them in lighter carts, which Plaintiff agreed to do. *Id.*

Defendant agrees that Powell and Plaintiff had a conversation about the IV room, but denies that the conversation was a decision about Plaintiff's accommodation request. Powell also emailed Plaintiff on November 30, 2015 asking Plaintiff to provide a doctor's note supporting the

position that she was able to work the IV room, but in a December 2 conversation, Plaintiff declined to seek an updated doctor's note.

On December 11, 2015, Plaintiff and her union representatives met with Powell and Miller. Miller asked Plaintiff to authorize her to look for a reassignment for Plaintiff within the VA and for her input on other potential departments by signing a VA Form 0857h. Plaintiff again refused. Also on December 11, 2015, Plaintiff received a letter from Chief of Pharmacy Donald Lynx stating that there were no light duty positions available in pharmacy. [27-2]

After that meeting, Plaintiff did not report to work. She first took sick leave, then leave without pay, for the next several months. On February 16, 2016, Plaintiff filed a formal complaint of discrimination, VA Form 4939. Subsequently, Plaintiff amended her complaint, which was accepted by the Office of Resolution Management of the Department of Veterans Affairs on March 24, 2016.

The parties dispute whether Plaintiff could perform the essential functions of her position. An undated[4] "Report of Contact," signed by Powell, lists nine duties that he determined Plaintiff could not complete:

> "Fill prescriptions and medical supplies for mail and window │ Task involves standing for long periods of time including heavy lifting
> Fill unit dose carts, unit stock, and automated dispensing devices. │ Task involves standing for long periods of time
> Compound Sterile preparations │ Task may involve standing or sitting for long periods of time and may involve heavy lifting
> Stock fluids and necessary medical supplies │ Task would involve heavy lifting
> Able to perform manipulations in laminar flow hood and retain certification in USP 797 │ Task may involve standing or sitting for long periods of times
> Perform compounding using barrier isolator cabinets. │ Task may involve standing or sitting for long periods of times
> Compounding chemotherapeutic intravenous solutions │ Task may involve sitting for long periods of times
> Stock shelves │ Task may involve heavy lifting

---

[4] Plaintiff asserts and Defendant admits that the Report of Contact was executed on or about May 27, 2016. [36] at 5.

>     Delivers pharmaceuticals to specific storage area │ Task may involve heavy lifting
>     and pushing of large delivery cart"

[27-2] (errors in original). Plaintiff's Rebuttal EEO complaint response, August 24, 2016, disputed these determinations. [29-10] at 1-2. Plaintiff said that two of the tasks Powell listed (filling prescriptions and medical supplies for mail and window, and stocking fluids and necessary medical supplies) were not duties of inpatient pharmacy technicians. She said that compounding chemotherapeutic solutions was not a general duty of inpatient pharmacy techs, and that many techs (including her) did not perform that task. Three remaining tasks (stocking shelves; compounding sterile preparations; and filling unit dose carts, unit stock, and automated dispensing devices) Plaintiff said she could perform and had been performing for years. She also denied that stocking shelves required heavy lifting. Regarding her limitations, Plaintiff stated that she had not performed manipulations in laminar flow hood (*i.e.*, worked in the IV room) for three and a half years, but noted that a full time technical specialist usually performed that work. Finally, Plaintiff said she was able to deliver and had been delivering pharmaceuticals using a light, four-wheeled cart, but was not able to push the heavy ECC carts. She also stated that the pharmacy "went cartless" and had already stopped using four of its six ECC carts. [29-10] at 2.

Plaintiff also asserts that Powell's deposition testimony contradicts each of the determinations listed in the Report of Contact, except the last:

> a. "Fill prescriptions and medical supplies for mail and window. Task involves standing for long periods of time including heavy lifting." Powell testified that if the task involved heavy lifting, it would be a reasonable accommodation to have someone assist Plaintiff with the task. [29-1] at 9-10.
>
> b. "Fill unit dose carts, unit stock, and automated dispensing devices. Task involves standing for long periods of time." Powell testified that he had seen Plaintiff perform these tasks over the three years he had supervised her and that Plaintiff had no problems completing them. [29-1] at 10.

7

c. "Compound Sterile preparations. Task may involve standing or sitting for long periods of time and may involve heavy lifting." Powell testified that if the task involved heavy lifting, it would be a reasonable accommodation to have someone assist Plaintiff with the task. [29-1] at 11.

d. "Stock fluids and necessary medical supplies. Task would involve heavy lifting." Powell testified that if the task involved heavy lifting, it would be a reasonable accommodation to have someone assist Plaintiff with the task. [29-1] at 12.

e. "Able to perform manipulations in laminar flow hood and retain certification in USP 797. Task may involve standing or sitting for long periods of times." Powell testified that IV specialist Silver Carrol, who reported directly to Powell, was the primary person to perform IV compounding, and that two other technicians, Kelly Wrzesinski and Analisa Javillonar, were the employees who typically performed these tasks. He also testified that pharmacists told Powell which technicians they preferred to work with in the IV room. [29-1] at 14.

f. "Perform compounding using barrier isolator cabinets. Task may involve standing or sitting for long periods of times." Powell testified that Plaintiff could alternate between sitting and standing while performing this task and that she would not have to stand continuously for two hours. [29-1] at 15.

g. "Compounding chemotherapeutic intravenous solutions. Task may involve sitting for long periods of times." Powell testified that Hines had not yet trained Plaintiff to compound chemotherapeutic solutions and that Silver Carrol, Kelly Wrzesinski, and Analisa Javillon primarily performed this task. [29-1] at 15. He also testified that he could not recall a time when this task required more than three technicians at a time.

h. "Stocks shelves. Task may involve heavy lifting." Powell testified that he could not think of any item Plaintiff would be required to stock that weighed over 25 pounds, and if any bundled items were heavier than that, Plaintiff could remove them from the packaging and stock them individually. [29-1] at 16.

Additionally, Powell conducted Plaintiff's annual Performance Appraisals for three years (Oct 1, 2012 to Sept 30, 2013; Oct 1, 2013 to Sept 30, 2014; and Oct 1, 2014 to Sept 30, 2015). For 2012-2013, Powell rated Plaintiff's performance "Fully Successful." For 2013-2014, he rated her performance "Excellent." For 2014-2015 he rated her performance "Fully Successful."

In early June 2016, Plaintiff received a removal letter from the VA. Plaintiff provided an oral response to Marc Magill, Interim Medical Center Director. She was removed from her

position on July 26, 2017.  On August 4, 2017, Plaintiff filed this lawsuit against David Shulkin, who was at that time the Secretary of Veterans Affairs, under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*.  Pending before the Court is Defendant's motion for summary judgment [25].

**II.     Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56(c)).  The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact.  See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Gibbs v. Lomas*, 755 F.3d 529, 536 (7th Cir. 2014) (quoting *Jewett v. Anders*, 521 F.3d 818, 821 (7th Cir. 2008)).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or

that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp.*, 477 U.S. at 323. "Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'" *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) (quoting Fed. R. Civ. P. 56(e)); see also *Anderson*, 477 U.S. at 250. In evaluating a motion for summary judgment, the Court will construe all facts in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party. *Bell v. Taylor*, 827 F.3d 699, 704 (7th Cir. 2016).

### III.   Analysis

The Complaint [1] alleges violations of the Rehabilitation Act (Count I) and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. (Count II), based on Hines' failure to provide a reasonable accommodation and removal of Plaintiff from her position. Defendant moves for summary judgment on both counts [25]. Regarding Count I, Defendant argues that: (1) Plaintiff cannot establish a failure to accommodate claim because she is not a "qualified individual" and because no accommodation would permit to perform the essential functions of her job; and (2) Plaintiff was responsible for the breakdown in the interactive process. Regarding Count II, Defendant argues that the ADA does not apply to this case. Finally, Defendant argues that the Court should reject any disparate treatment claim that Plaintiff may be attempting to bring.

### A. Count I, The Rehabilitation Act

The Rehabilitation Act states that "[n]o otherwise qualified individual with a disability *** shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination *** under any program or activity conducted by any Executive agency ***." 29 U.S.C. § 794(a). Employment discrimination claims brought under the Rehabilitation Act are analyzed under the same standards applicable to claims brought under Title I of the Americans with Disabilities Act. See *id*. § 794(d); *Brumfield v. City of Chicago*, 735 F.3d 619, 630 (7th Cir. 2013). To prevail on a failure to accommodate claim brought under the Rehabilitation Act, Plaintiff must show that (1) she is a qualified individual with a disability; (2) her employer was aware of her disability; and (3) her employer failed to reasonably accommodate her disability. *Brumfield*, 735 F.3d at 631. A "qualified individual" is a person who "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C.A. § 12111. The Code of Federal Regulations defines a reasonable accommodation under the ADA as "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii); see also *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 813 (7th Cir. 2015).

    i.  *Qualified Individual*

A genuine dispute of material fact exists with regard to whether Plaintiff is a qualified individual within the meaning of 42 U.S.C.A. § 12111. A "qualified individual" is a person who "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."42 U.S.C.A. § 12111. Courts assess a

range of factors to determine whether a particular task is an "essential function" of a job, including "the employee's job description, the employer's opinion, the amount of time spent performing the function, the consequences for not requiring the individual to perform the duty, and past and current work experiences." *Gratzl v. Office of the Chief Judges of the 12th, 18th, 19th, & 22nd Judicial Circuits*, 601 F.3d 674, 679 (7th Cir. 2010) (quotation omitted). "In determining whether a particular duty is an essential function, the employer's judgment is an important factor, but it is not controlling ***. [W]e also look to evidence of the employer's actual practices in the workplace." *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 285–86 (7th Cir. 2015) (quoting *Miller v. Ill. Dep't of Transp.*, 643 F.3d 190, 198 (7th Cir. 2011)).

The record before the Court presents a dispute over what the essential functions of Plaintiff's job were, and therefore whether she is a "qualified individual." Defendant presents Powell's list of nine tasks that he claimed Plaintiff could not perform. For each, Plaintiff has submitted evidentiary materials that contain specific facts showing that there is a genuine issue for trial. *Harney*, 526 F.3d at 1104 (quoting Fed. R. Civ. P. 56(e)). On the first eight tasks, Powell at least arguably disputes himself. His deposition testimony appears to conflict with his written assertions that these tasks are essential to the inpatient pharmacy technician position, or that they involve heavy lifting Plaintiff could not perform, or that Plaintiff could not perform them with or without a reasonable accommodation. Plaintiff's submissions, particularly her rebuttal EEO complaint response ([29-10]), also provide evidence that she could (and often did) perform the tasks Powell listed, or that the tasks were not part of her job. Additionally, the Functional Statement for inpatient pharmacy technicians does not mention any heavy lifting, suggesting either that those tasks do not actually require heavy lifting or, if they do, that they are not or should not be part of Plaintiff's job. Furthermore, there is evidence that Hines's and Powell's practices

12

delegate several of the tasks Powell listed to other employees in the pharmacy, including specialists, and Hines had not even trained Plaintiff for one of the tasks Powell listed. Viewed in the light most favorable to Plaintiff, a reasonable juror could conclude that these tasks either were not essential functions of her job, or she was able to perform them with or without a reasonable accommodation.

The ninth task, "Delivers pharmaceuticals to specific storage area," which "may involve heavy lifting and pushing of large delivery cart," is the at heart of the parties' dispute. Besides Powell's opinion, however, there is little evidence that pushing a heavy cart an essential function of Plaintiff's job. Delivering supplies is a task identified in the Functional Statement, but that document says nothing about heavy lifting or pushing a large delivery cart. Plaintiff's past work experiences suggest that delivering items was an important part of her job, but that using a heavy cart was not—she had spent years using a lighter cart. Finally, Hines was in the process of replacing the heavy ECC carts with another method of delivering supplies; if the employer was about to eliminate an activity or a method of accomplishing a task, a reasonable jury could find that it was not an essential function of the job. In the light most favorable to Plaintiff, the record suggests that delivering supplies, not using the heavy cart, was an essential function of Plaintiff's job, and she was able to perform that function.

For these reasons, Defendant has not met his burden of showing that is no genuine dispute as to any material fact on this issue. See *Celotex Corp.*, 477 U.S. at 323.

    ii.    *Offer of a Reasonable Accommodation*

There is also dispute over whether Defendant failed to reasonably accommodate Plaintiff's disability. Defendant says Powell offered to allow Plaintiff to use a "different" cart and to provide Plaintiff a cushioned chair in the IV room. According to Defendant, Plaintiff declined those

accommodations and asked not to be required to push carts or work the IV room at all. In contrast, Plaintiff denies that Powell offered to let her use a different cart and that she declined any accommodations, including the IV room chair.

Construing the disputed facts and drawing all reasonable inferences in Plaintiff's favor, a jury could conclude that Powell offered no accommodation at all regarding pushing the heavy ECC carts and that Plaintiff did not decline any offer of accommodation. A jury could believe Plaintiff's version of events instead of Powell's, and the record does not allow the Court to reject Plaintiff's version. Defendant's version is not even that clear; Defendant does not clarify what cart Powell said Plaintiff could use—a different "heavy ECC cart," a lighter cart that Plaintiff had previously used for deliveries, or another cart? This issue comes down to a credibility determination and is appropriate for trial, not a summary judgment decision. See *Estate of Perry v. Wenzel*, 872 F.3d 439, 454 (7th Cir. 2017) (noting district court's obligation at summary judgment stage to "refrain from making credibility determinations").

      *iii.*    *The Interactive Process*

Defendant also argues that Plaintiff cannot prevail because she caused the breakdown in the interactive process by refusing to meet with the accommodation coordinator. Employees who request accommodation and employers must participate in an interactive process to determine the appropriate accommodation under the circumstances. *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir. 2005) "This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). If the process breaks down, courts "should look for signs of failure to participate in good faith or failure by one of the parties to help the other party determine what specific accommodations are necessary." *Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281,

1285 (7th Cir. 1996) (citation omitted). In this case, there is a genuine dispute of material fact about whether Plaintiff or Defendant caused the breakdown. While Plaintiff did refuse to meet the coordinator, she says her refusal was based on the requirement that she sign VA Form 0875h before doing so. That form appears to require an admission that the employee cannot perform essential functions of her job. Rather than agreeing with that premise and meeting the coordinator, Plaintiff continued to discuss her limitations and requested accommodations with Powell. In the light most favorable to Plaintiff, her actions were part of, not a breakdown of, the interactive process.

Furthermore, Powell's determination that Plaintiff could not perform essential functions of her position may have been in bad faith. Powell listed nine duties that he claimed Plaintiff could not complete. This list exceeds the set of tasks that Plaintiff requested accommodation for. It is not consistent with the most recent doctors note Powell had received from Plaintiff, nor is it consistent with the VA's description of the inpatient pharmacy technician's job. Most significantly, Powell appears to have admitted at his deposition that Plaintiff could have performed several of these tasks, either with or without accommodation, and that he had observed her performing several of these tasks without difficulty. A jury could reasonably conclude that Plaintiff was not responsible for the breakdown of the interactive process, either because she kept attempting to reach agreement with Powell through December of 2015 or because Powell's determination that Plaintiff could not perform her job functions, which ended the interactive process, was made in bad faith.

In sum, the facts described above, taken together and viewed in the light most favorable to Plaintiff, could lead a reasonable jury to conclude that Plaintiff is a qualified individual; that Powell did not offer Plaintiff a reasonable accommodation; and that Plaintiff was not responsible for any

15

breakdown in the interactive process. For these reasons, Defendant's motion for summary judgment [25] is denied with regard to Count I.

### B. Count II, Americans With Disabilities Act

Count II alleges that Defendant's failure to provide a reasonable accommodation and removal of Plaintiff from her position violate the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. ("ADA"). The ADA, however, does not allow federal employees to bring disability discrimination claims; their "sole remedy" for such claims is the Rehabilitation Act. *Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005); *Atiogbe v. Brennan*, 2017 WL 2215017, at *5, n. 14 (N.D. Ill. May 19, 2017). Plaintiff was a federal employee at all times relevant to her suit. In the suit, Plaintiff alleges that her employer, a federal agency, discriminated against her on the basis of her disability. Therefore, Plaintiff may not bring a claim under the ADA, and Defendant's motion for summary judgment [25] must be granted with regard to Count II. Judgment for Defendant will be entered on Count II.

### C. Evidence Related to Disparate Treatment

Finally, Defendant identifies evidence suggesting Plaintiff may have been treated differently from other employees and asks that the Court "dismiss" any disparate treatment claim that Plaintiff may be making. There does not appear to be a disparate treatment claim in front of the Court. The Complaint does not assert that Defendant treated Plaintiff differently, on the basis of a disability, than non-disabled employees. Nor does Plaintiff's brief mention disparate treatment evidence or claims at all. The Court is reluctant to rule on an unpled claim that that is not properly before it. To the extent that Defendant moves for a ruling regarding evidence of disparate treatment, the Court declines to issue one at this time. However, if Plaintiff later attempts

to use evidence of Defendant's treatment of other employees and Defendant believes the use is improper, Defendant may raise his objections then.

## IV. Conclusion

For the reasons explained below, Defendant's motion [25] is denied with respect to Count I and granted with respect to Count II. Judgment will be entered for the Defendant on Count II. The case is set for further status on August 21, 2019, at 9:00 a.m. Finally, the Court orders the substitution of Robert L. Wilkie, Jr., Secretary of Veterans Affairs, for David J. Shulkin, under Federal Rule of Civil Procedure 25(d).

Dated: July 29, 2019

_____
Robert M. Dow, Jr.
United States District Judge